UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MATTHEW CLAUSSEN, SUSAN PELFREY ) <br> MICHAEL OPINKER, SCOTT RAKOS, and ) <br> JUDA PARKS, ) <br>           Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> MICHAEL R. PENCE, as Governor of the ) <br> State of Indiana, PAUL JOYCE, ) <br> TAMMY WHITE, MIKE BOZYMSKI, ) <br> as members of the State Board of ) <br> Accounts, ) <br> ) <br>           Defendants. ) | Cause No. 2:15-cv-52 |

## **OPINION AND ORDER**

The five plaintiffs in this case are government employees who have been elected to office in the same municipality that employs them. Matthew Claussen is a police officer in Hobart and serves on the Hobart City Council. Susan Pelfrey works in the water department for the Town of New Chicago while also serving on the New Chicago Town Council. Michael Opinker and Scott Rakos are (or were) firefighters in the City of Hammond and serve (or will serve) on the Hammond City Council. (Mr. Rakos recently resigned from the fire department and has been elected to the Hammond City Council for the first time.) Finally, Juda Parks works as a police officer in East Chicago and serves on the East Chicago City Council. Each plaintiff was elected or reelected in the general election last month.

The problem for the plaintiffs is that a new Indiana statute prohibits individuals

from simultaneously holding elected office and being employed as civil servants in the same unit of government. Here's what the statute in question says in relevant part: "[A]n individual is considered to have resigned as a government employee when the individual assumes an elected office of the unit that employs the individual." Ind. Code § 3-5-9-5 (2015). The statute was passed in 2012 but was made to go into effect in 2016 for current officeholders, so that those who happen also to be government employees in the same unit would have an opportunity to make a rational decision about whether to run for reelection. *See* Ind. Code § 3-5-9-7 (c) (2013) (grandfathering Ind. Code § 3-5-9-5 for those in elected office on January 1, 2013).

With one exception the plaintiffs earn substantially more money as civil servants than they do or would as elected officials, given the part-time nature of the city and town council positions. Mr. Claussen earns nearly $60,000 as a Hobart police officer but only about $13,000 as a Hobart City Councilman. Ms. Pelfrey earns around $34,000 working for the New Chicago water department but only about $8,000 on the New Chicago Town Council. Mr. Opinker and Mr. Rakos earn more than twice the amount as City of Hammond firefighters than the approximately $26,000 paid to Hammond City Councilmen. The outlier is East Chicago, where Mr. Parks earns $49,000 as a police officer and nearly that much ($41,000) for his work on the City Council. In all events, there is no question that if the plaintiffs assume elected office on January 1st, they will—by operation of the challenged statute—forfeit their civil service positions and suffer a concrete harm.

The defendants seek dismissal of the Second Amended Complaint (DE 36). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) a complaint must be plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Facially plausible means the "factual allegations plausibly suggest an entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (2011) *(*internal quotation and citation omitted).

The plaintiffs claim that Ind. Code § 3-5-9-5 is unconstitutional and thus seek a declaratory judgment and a permanent injunction against enforcement. Their scattershot approach includes constitutional claims under a number of First Amendment theories, as well as claims under the Contracts Clause, the Fourteenth Amendment Equal Protection Clause, and the Takings Clause of the U.S. Constitution. In addition, they allege various violations of the Indiana Constitution. I take up their claims below, but first I need to briefly discuss a kerfuffle over who is the proper defendant in this case.

*Eleventh Amendment Sovereign Immunity*

Plaintiffs have sued the members of the State Board of Accounts, the state agency most closely tied to enforcement of the questioned statute. But the plaintiffs have also sued Indiana Governor Michael Pence, and he objects on Eleventh Amendment grounds to being named as a defendant. As the defendants essentially conceded at the oral argument on the pending motion, this issue is really just a distraction. To challenge the statute, *someone* needs to be sued, and the Governor, as the head of Indiana's executive branch of government and the official who oversees the State Board of

Accounts, seems to be the proper person. This is because there are exceptions to sovereign immunity. Among them is that one may bring suit against a state official in his official capacity to enjoin future violations of the U.S. Constitution. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908). The relief plaintiffs seek is of the sort anticipated in *Ex Parte Young*—prospective and injunctive, and victory here would not "require direct payments by the state from its treasury." *See Council 31 of the Am. Fed'n of State, Cnty & Mun. Employees v. Quinn*, 680 F.3d 875, 882–83 (2012) (cautioning sovereign immunity bars relief labeled injunctive if it would require the payment of state treasury funds).

Because I'm dismissing the case in its entirety, I need not decide the Eleventh Amendment issue. It is true that Governor Pence must have more than a general duty to enforce the statute. *See Ex Parte Young*, 209 U.S. at 157–58 (holding a state official "must have some connection with the enforcement of the act" otherwise a suit for injunctive relief "makes him a party as a representative of the state"); *see also Hearne v. Bd. of Educ.*, 185 F.3d 770, 777 (7th Cir. 1999) (finding governor immune from suit because he "could not conceivably help the plaintiffs' cause"). But Governor Pence has some connection to this statute, including arguably to its enforcement. The State Board of Accounts, as a state agency with a broad auditing function, is central to uncovering noncompliance with the challenged statute, and Governor Pence alone holds the power to appoint and remove State Board of Accounts examiners for incompetence or misconduct, subject to confirmation by the Indiana Legislative Council. (*See* DE 41-1 at 2.) Governor Pence's connection to the statute, though indirect, seems sufficient for Eleventh Amendment

and *Ex Parte Young* purposes. *See Back v. Carter*, 933 F. Supp. 738, 752 (N.D. Ind. 1996) (finding sovereign immunity did not bar suit where challenged statute created commission that submitted judicial nominees to governor and governor had power to appoint judges based on commission's nominations). But again, in light of the dismissal of the case, I need not decide the issue definitively.

### Count I: First Amendment Claims

Plaintiffs' principal claim is under the First Amendment. The Second Amended Complaint alleges that "campaigning for and holding elected office is political speech protected under the First Amendment" and that the statute severely burdens that speech without a compelling state interest. (DE 30 at ¶¶ 57–58.) In their response to defendants' Motion to Dismiss, plaintiffs go farther, briefly touching on several possible First Amendment theories. (DE 41 at 5–9.) Chief among them is that the questioned statute infringes a fundamental right to hold office once elected, derived from the fundamental right to vote and distinct from the right to candidacy. (*Id.* at 6–7.)

The distinction the plaintiffs attempt to draw between the right to hold office and the right to candidacy eludes me. One follows from the next. *See Krisher v. Sharpe*, 763 F. Supp. 1313, 1319 (E.D. Pa. 1991) (finding "no palpable distinction" between the right to run for office and the right to hold it), *aff'd*, 944 F.2d 897 (3d Cir. 1991); *Fletcher v. Marino*, 882 F.2d 605, 613–14 (2d Cir. 1989) (labeling "absurd" plaintiffs' argument "that because they have been allowed to run for office they cannot now be prevented from taking office"). What can be said with some degree of certainty is that the right to run

for office and the right to hold office are at least close cousins, and we know from *Brazil-Breashears v. Bilandic*, 53 F.3d 789 (7th Cir. 1995), that the former is not a fundamental right and so "some lesser level of scrutiny applies." *Id.* at 792 (citing *Bullock v. Carter*, 405 U.S. 134, 142–43 (1972) and *Citizens for John W. Moore v. Chi. Election Comm'rs*, 845 F.2d 144, 148 (1972)). But, in any event, the level of scrutiny is not the proper inquiry when considering restrictions on First Amendment rights; rather, whether "such a policy violates the First Amendment has been traditionally dependent upon a balancing test between the individual's First Amendment rights and the interests of the public body." *Brazil-Breashears*, 53 F.3d at 792 (internal quotations omitted).

Courts across the nation have upheld far more burdensome restrictions on candidacy against First Amendment challenges, most applicable here outright bans on campaigning and candidacy and resign-to-run laws requiring would-be candidates to resign from their current office or employment to get on the ballot. *See, e.g., Clements v. Fashing*, 457 U.S. 957, 971–73 (1982) (automatic resignation from office upon candidacy for any other office, unless remaining term is less than a year); *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 567, 580–81 (1973) (ban on political management and campaigning by civil servants); *Torres-Torres v. Puerto Rico*, 353 F.3d 79, 83 (1st Cir. 2003) (law disqualifying those previously removed from office for misconduct from running for mayor); *Phillips v. City of Dall.*, 781 F.3d 772, 778–82 (5th Cir. 2015) (prohibition on city employees seeking office); *Brazil-Breashears*, 53 F.3d at 791–92 (ban on judicial employees running for office or accepting appointment); *Grizzle*

*v. Kemp*, 634 F.3d 1314, 1322–26, (11th Cir. 2011) (prohibition against relatives of school administrators serving on elected school boards); *Krisher*, 763 F. Supp. at 1319 (regulation barring state troopers from running for office).

The statute challenged here is far less onerous. Here, an employee can run for office and, should he win, choose between assuming office and continuing in his government job. In the resign-to-run context, the employee must quit his job and take a chance on the electoral process. If he loses the election, he is out of both the elected job *and* his civil service position. For this reason, whatever burden is imposed on the plaintiffs' First Amendment rights in this case is much less than the burden placed on them in the resign-to-run context. And unquestionably, as the plaintiffs rightly concede, and as I discuss below, Indiana has a substantial and legitimate interest in preventing corruption and self-dealing or the appearance of those things. (*See* DE 41 at 7; *Wright v. DeArmond*, 977 F.2d 339, 346 (7th 1992); *Nixon v. Shrink Mo. Gov. PAC,* 528 U.S. 377, 388–89 (2000).)

As mentioned, plaintiffs argue that the right to be an officeholder is somehow distinct from the right to be a candidate for office. They couch this distinction in the voters' right to have the person that they elected assume the office. Let's suppose for the moment that a meaningful distinction can be drawn between the right to candidacy and the right to be an officeholder after being duly elected. What then are we to make of the bevy of laws that prohibit people from retaining office? Suppose a sitting councilman moves outside the city limits or an elected official is convicted of a felony while in

office. State law—in Indiana and elsewhere—would force both to resign. *See, e.g.*, Ind. Code § 36-5-2-6 (b) (2015) ("A member of the legislative body who is elected by the voters of a district forfeits office if the member ceases to be a resident of the district."); Ind. Code § 5-8-1-38 (b) (2015) ("Any public officer convicted of a felony during the public officer's term of office shall . . . be removed from office by operation of law[.]"). At oral argument, the plaintiffs conceded that these types of restrictions are permissible. Yet conceptually there is no difference between these types of restrictions on felons and nonresidents from holding office, on the one hand, and restrictions on officeholders employed in the same government unit, on the other. All these restrictions potentially thwart the will of the people, but they are entirely permissible because the magnitude of the burden is outweighed by an undeniably important public interest. *Compare Burdick v. Takushi*, 504 U.S. 428, 441–42 (1992) (holding a prohibition on write-in votes did not infringe voters' First Amendment rights).

The plaintiffs cite to Justice Kennedy's concurrence in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), for the proposition that the right to serve if elected by majority vote is derivative of the right to vote. (DE 41 at 6 (citing *U.S. Term Limits*, 514 U.S. at 844 (Kennedy, J., concurring).). But the factual context there is miles apart from this case. That case involved the question of whether an amendment to the Arkansas Constitution imposing term limits on congressional candidates violated the Qualifications Clause of the U.S. Constitution (Art. I, § 3, cl. 3). *U.S. Term Limits*, 514 U.S. at 784–85.

It is true that sometimes restrictions on candidates go so far as to implicate the right of the voters to elect the person of their choosing. *Anderson v. Celebrezze,* 460 U.S. 780 (1983), provides a good example. In *Anderson*, the U.S. Supreme Court struck down an Ohio state law requiring independent presidential candidates to announce their candidacy by March 20th of the election year. 460 U.S. at 806. There, the Court laid out the factors a court must consider in determining the constitutionality of such laws:

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 789 (citations omitted). The *Anderson* Court concluded that the Ohio statute went too far, violating the candidates' and the voters' First Amendment rights. *Id.* at 806. But that is the exception that proves the rule.

Weighing the factors in this case, it is clear that the government has an important and compelling interest in avoiding corruption or the appearance of corruption. This was brought into sharper focus at oral argument when I was told that as members of city or town council, the plaintiffs would have the authority under state law to vote for raises for municipal employees—including for themselves. It strikes me as entirely

reasonable for the General Assembly to have wanted to avoid a situation where elected officials are allowed to feather their own nests.

The General Assembly may have had other concerns beyond elected officials voting themselves pay raises. Let's suppose that an ordinance is up for a vote that would require police officers to wear body cameras. If a police officer is on the city council he has a very real and tangible personal interest when casting his vote on that ordinance. Undoubtedly, it would be a good thing to have the police department's insight on whether body cameras are worthwhile or not. But having input is different from being the final decision maker, and the General Assembly could have been concerned with an elected official using his official position to favor the city department that employs him. I could go on, but the point is that there is an obvious compelling state interest in avoiding these types of conflicts of interest.

And what is the burden to the plaintiffs, anyway? No one has commanded them to run for office. And if elected they alone choose between serving in office and retaining their civil service positions. The burden, while not insubstantial, is vastly outweighed by Indiana's compelling interest in avoiding real and perceived conflicts of interest by elected officeholders.

Nor have the plaintiffs plausibly alleged any other First Amendment violation. Let's set to the side for the moment the fact that Second Amended Complaint does not even mention the plaintiffs' right to freedom of association. (DE 30; Fed. R. Civ. P. 8(a).) Although there is no mention in the complaint, the plaintiffs do make a passing

reference to freedom of association in their opposition brief. But to make a out a colorable freedom of association claim, plaintiffs would need to have alleged that they were advancing the political ideas of a particular set of voters by running for the offices they ultimately won. *See Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977). There is not a hint of that in the complaint or plaintiffs' opposition brief. (DE 30; DE 41.) Without it, their freedom of association claim cannot stand. *See id.* ("[S]ince plaintiff has not alleged that by running for Congress he was advancing the political ideas of a particular set of voters, he cannot bring his action under the rubric of freedom of association[.]")

The plaintiffs also argue that the statute violates the "unconstitutional condition" doctrine in which "the government may not deny a benefit to a person because he exercises a constitutional right." (DE 41 at 7 (citing *Regan v. Taxation with Repres.*, 461 U.S. 540, 545 (1983).) The Indiana statute does no such thing. It does not burden plaintiffs' right to run for or assume office anywhere except in the government unit in which they are employed; they are free to run for and assume office elsewhere, including in the county, the state, or the federal government. *Compare Davenport v. R.R. Ret. Bd.*, 453 F.2d 185, 188 (5th Cir. 1972) (rejecting an unconstitutional conditions claim where alderman was deprived of city annuity while in office but was "perfectly free to seek election to an office" in another governmental entity).

In sum, plaintiffs' claims under the First Amendment must be dismissed. The challenged statute is a permissible regulation that attempts to eradicate real or perceived corruption and conflicts of interest. These are compelling state interests, and I

will not second-guess the General Assembly's decision.

*Count II: Contract Clause Claim*

Plaintiffs also claim the statute violates Article I, § 10 of the U.S. Constitution "by substantially impairing Plaintiffs' contractual relationship with the cities and towns that employ them without a significant and legitimate purpose, and without being reasonable or appropriate for their intended purpose." (DE 30 at ¶ 64.) The parties dispute whether plaintiffs' employment is at will, but it makes no difference. In either case, the plaintiffs have employment contracts[1] that are not impaired by the statute at all, let alone substantially. *See Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (The threshold inquiry for a Contract Clause challenge "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial."). When the Indiana General Assembly enacted the statute in 2012, there was no effect on the employment contracts of the four plaintiffs already in public office—they continued to work as government employees. *See* Ind. Code § 3-5-9-7 (c) (2013) (grandfathering application of Ind. Code. § 3-5-9-5 to those already in public office until 2016). Even now that the 2015 elections have occurred, the statute has not changed plaintiffs' contractual relationship with their

---

[1] Plaintiffs' relationship with their employers is contractual, even if they are employed at will. *See Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284 (Ind. 1991) ("The parties in an employment at will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship."); *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 438 (7th Cir. 1987) ("[E]mployment at will is still a contractual relation, one in which a particular duration ('at will') is implied in the absence of a contrary expression.").

employers. The simple fact is that plaintiffs' employment contracts will not change unless plaintiffs decide to assume office in January 2016. That does not and cannot constitute impairment of a contract by passage of law. The Contract Clause was never meant to protect people from their own decisions.

*Count III: Equal Protection Claim*

The Second Amended Complaint alleges that the statute violates the Equal Protection Clause of Fourteenth Amendment by treating plaintiffs differently "from all other candidates for . . . office in the same government unit, as well as from candidates . . . who are employees of a [different] government unit." (DE 30 at ¶ 70.) But this claim suffers from several fatal weaknesses. To begin with, and as plaintiffs conceded during oral argument, the plaintiffs are not members of a suspect class. Second and as discussed above, plaintiffs have no fundamental right to candidacy—even in an equal protection context. *See Clements*, 457 U.S. at 963; *Brazil-Breashears*, 53 F.3d at 793. Because there is no suspect class and no fundamental right is implicated, Indiana only needs to show "a rational relationship between the disparity of treatment and *some* legitimate purpose." *Council 31*, 680 F.3d at 886 (emphasis in original) (internal quotation and citation omitted). There is no doubt Indiana can show that. Indeed, plaintiffs admit that "preventing public corruption or the appearance of corruption is a compelling state interest[.]" (DE 41 at 7.)

As noted above in the First Amendment discussion, there is a clear, rational relationship between preventing the appearance of corruption and Indiana's disparate

treatment of municipal employees. The simple fact of the matter is that there is obviously a greater risk of self-dealing when a municipal worker holds office in the same government unit that employs him, and the questioned law attempts to address that problem.

Plaintiffs argue that they should be treated in the same way as government contractors when it comes to conflicts of interest. State law requires contractors to avoid conflicts through extensive disclosure requirements. It scarcely needs to be said that there is a real difference between government employees and contractors. But even if there weren't, the Fourteenth Amendment does not require Indiana to address every manifestation of the public corruption problem all at once. *See Clements*, 457 U.S. at 969 ("The Equal Protection Clause allows the State to regulate one step at a time, addressing itself to the phase of the problem which seems most acute.") (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 (1955).

Plaintiffs also argue that possible corruption or conflicts of interest could be addressed in a narrower way by requiring elected officials to recuse themselves when a matter comes before them that they may have a personal interest in. Undoubtedly, the General Assembly could have passed such a law. It too would be rationally related to a legitimate public interest. But what would become of the citizens whose interests are left unrepresented under such a paradigm? Questions like this simply serve to demonstrate that my role in evaluating state laws under the equal protection clause is very narrow when neither a suspect class nor a fundamental right is at stake. The only

inquiry is whether there is "a plausible basis for the legislation[.]" *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013). And there plainly is here.

In sum, plaintiffs' Equal Protection claim fails because the challenged statute does not implicate a suspect class or a fundamental right and the statute is rationally related to a legitimate governmental interest.

*Count VII: Takings Claim*

Plaintiffs Claussen, Parks, and Opinker allege the statute violates the Fifth Amendment's prohibition against the taking of private property for public use, without just compensation. (DE 41 at 17–20.) Specifically, these plaintiffs assert they have a protected property interest in continued employment by their local governments and therefore the automatic resignation of that employment constitutes a regulatory taking. They are attempting to hammer a square peg into a round hole. The purpose of the Takings Clause "is to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 227 (1986) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960) (internal quotation marks omitted). In determining whether a state-inflicted economic injury constitutes a taking, courts have engaged "in essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action—that have particular significance." *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979) (internal citation

omitted). But it is unnecessary to graft that type of analysis onto this statute because the statute does not affect the plaintiffs' employment. Passage of the statute did not result in plaintiffs' resignation, and the statute does not compel plaintiffs to assume public office and thereby resign their employment. The plaintiffs alone will decide whether they want to assume public office and forego continued government employment. They simply have not been shouldered with a financial burden that the public at large should bear; there is no taking at all here, unconstitutional or otherwise.

*State Law Claims*

With few exceptions, when all of a complaint's claims under federal law are dismissed, the court should leave any supplemental state law claims to the state courts. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251–52 (1994); *see also* 28 U.S.C. § 1367 (c)(3). Courts recognize three exceptions to this general rule: where the limitations statutes on the state claims have run, where the court has already invested substantial resources in deciding the state claims, and where it is "absolutely clear" how the state claims should be decided. *Id.* No exception applies here, and so I decline to exercise jurisdiction over the plaintiffs' state law claims. They are dismissed without prejudice to plaintiffs' ability to refile them in state court, should they choose.

## CONCLUSION

For these reasons, the Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (DE 36) is **GRANTED** with respect to the federal claims alleged in the Second Amended Complaint (DE 30), and Counts 1–3, 7, and 9 of the Second

Amended Complaint are **DISMISSED WITH PREJUDICE**. I decline to exercise supplemental jurisdiction over the plaintiffs' state law claims (Counts 4–6, 8, and 10), and they are **DISMISSED WITHOUT PREJUDICE** to the plaintiffs' ability to file them in state court. All other pending motions are denied as moot.

    **SO ORDERED.**

    **ENTERED**: December 2, 2015.

s/ Philip P. Simon
CHIEF JUDGE
UNITED STATES DISTRICT COURT
